**Michael WARREN, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 181, 2000.**

Supreme Court of Delaware.

Submitted: April 10, 2001.
Decided: May 14, 2001.

---

J. Brendan O'Neill, Assistant Public Defender, Office of the Public Defender, Wilmington, Delaware, Attorney for Appellant.

Marie O'Connor Graham, Deputy Attorney General, Department of Justice, Dover, Delaware, Attorney for Appellee.

Before VEASEY, Chief Justice, WALSH and BERGER, Justices.

PER CURIAM.

This case requires us to clarify further the application of two exceptions to the rule against hearsay. Specifically, we address whether recordings of two 911 calls are admissible under the hearsay exception for present sense impressions. We conclude that some of the statements during the second recorded 911 call do not fall within the present sense impression exception because they referred to incidents that occurred more than one hour earlier. Nevertheless, we conclude that admission of these statements was not error because they fall within the hearsay exception for excited utterances.

We are also called upon once again to address the propriety of comments made by the prosecutor during the State's closing argument. Although we find that the prosecutor impermissibly anticipated and responded to an affirmative defense that the defendant did not raise and improperly characterized statements by the defendant, the prosecutor's comments during summation were not so clearly improper that they constituted plain error. Because we find no merit in the defendant's other arguments, we affirm the judgment of the Superior Court.

### Facts

On January 14, 1997 Brenda Felton called 911 to report that Michael Warren had struck her in the face during an argument and had broken into her neighbor's apartment through its rear window. Felton also indicated that Warren had left her apartment for a neighboring apartment complex. The dispatcher sent an officer to the scene. The officer took Felton's statement and left soon thereafter to complete his report.

Warren returned to Felton's apartment approximately one hour after the first incident, and Felton again called 911. While Felton was on the phone with the 911 operator, she continued to argue with Warren and demanded that he leave her

apartment. At some point during the call, Warren once again left Felton's apartment for the nearby apartment complex. The same officer was dispatched to Felton's apartment, and Felton repeated her account of the events. The officer went to the apartment of Felton's neighbor to look for evidence of a break-in. In the neighbor's living room, the officer noticed that electronic equipment was in disarray, and he found a hat and a trash bag in front of the television. The officer also noticed that a window-screen had been removed from one of the rear windows and was lying on the ground beneath the window.

The officer eventually located Warren at the neighboring apartment complex, arrested him, and brought him to the police station for questioning. Warren initially denied entering the apartment of Felton's neighbor that day. Later in the interrogation, Warren changed his story and asserted that he entered the neighbor's apartment through the rear window with the neighbor's permission. He also stated that he did not take anything from the apartment. Warren was ultimately charged with second degree burglary, theft, an aggravated act of intimidation, and third degree assault.

At Warren's trial, the State presented recordings of the two 911 calls, the testimony of the arresting officer, and a recording of Warren's interrogation.[1] The defense did not present evidence. At the conclusion of the trial, the jury found Warren guilty of second degree burglary and third degree assault. The trial court sentenced Warren to two years in prison (suspended after six months) for the burglary and one year (suspended after six months) for the assault.

### Admission of Hearsay Statements During 911 Calls

 On appeal, Warren raises two claims of error concerning the trial court's admission of the recordings of Felton's two 911 calls. First, Warren argues that the recordings are not admissible because they are hearsay and do not fall within the present sense impression exception set out in D.R.E. 803(1). Second, Warren argues that, even if the recordings fall within this exception, admission of the recordings violates the Confrontation Clause of the Delaware and federal constitutions because Felton was not available for cross-examination at trial. We review the Superior Court's decision to admit or exclude evidence for an abuse of discretion, and we review *de novo* claims alleging the infringement of a constitutionally protected right.[2]

### A. Exceptions for Present Sense Impressions and Excited Utterances

 A hearsay statement is admissible under the present sense impression exception set out in D.R.E. 803(1)[3] if the statement satisfies the following requirements:

> [T]he declarant must have personally perceived the event described; the declaration must be an explanation or description of the event, rather than a narration; and the declaration and the event described must be contemporaneous. The statements, however, need not

---

1. Evidently, Felton and her neighbor were not present at Warren's trial because they had moved away between the time of the incident and the time of the trial.

2. *See Williamson v. State*, Del.Supr., 707 A.2d 350, 354 (1998).

3. D.R.E. 803(1) permits the admission of a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."

be precisely contemporaneous with the ·triggering event but must be in response to it and occur within a short time after the stimulus.[4]

The exception for present sense impressions is based on the theory that spontaneous statements describing an event are trustworthy because the declarant has no time to fabricate the statements and because there is less concern that the statements reflect a defect in the declarant's memory.[5]

■ Warren also implicitly argues that a hearsay statement is admissible as a present sense impression only if there is independent evidence to corroborate the statement. Although several courts have reached this conclusion,[6] we find that independent corroboration of the statement is not a prerequisite for admission under the present sense impression exception.[7] In some cases, corroborating evidence may be required to determine whether the declar-

ant made the statement at the time of the triggering event or whether the declarant actually perceived the triggering event.[8] But the language of the rule does not require corroborating evidence under all circumstances, and we find no reason to infer such a general requirement.

■ In the present case, there is no dispute that Felton perceived the underlying events or that she made the first recorded 911 call during or immediately after the underlying events—that is, the alleged assault and break-in. Instead, Warren argues that the 911 calls were a "narration" rather than a "description" of the events. After reviewing the transcript of the first 911 call, we find that Felton's statements were not a "narration" because Felton related her account of the recent events to the 911 operator with little embellishment or extraneous commentary. We therefore conclude that

4. *Abner v. State*, Del.Supr., No. 280, 1999, 2000 WL 990973 (June 29, 2000) (ORDER), Order at ¶ 4 (citing *Paskins v. State*, Del.Supr., No. 341, 1981, Quillen, J., 1983 WL 10913 (Jan. 17, 1983) (ORDER), Order at 5).

5. *See United States v. Blakey*, 7th Cir., 607 F.2d 779, 785 (1979) ("The underlying rationale of the present sense impression exception is that substantial contemporaneity of event and statement minimizes unreliability due to defective recollection or conscious fabrication."), *overruled on other grounds, Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

6. *See, e.g., People v. Vasquez*, 88 N.Y.2d 561, 647 N.Y.S.2d 697, 670 N.E.2d 1328, 1335 (1996) (holding that, to be admissible under the present sense impression exception, "there must be some independent verification of the declarant's descriptions of the unfolding events"); *Blakey*, 607 F.2d at 785 ("It is not necessary that the witnesses be in the same position to observe as the declarant; it is only necessary that the witnesses be able to corroborate the declarant's statement."); *see also* 1 Stephen A. Saltzburg et al., Federal

Rules of Evidence Manual 1650–51 (7th ed.1998) (observing that "[m]ost Federal Courts are reading a corroboration requirement into Rule 803(1)" and that the advisory committee note to the rule "indicates that the drafters intended a corroboration requirement for this exception").

7. *See, e.g., State v. Flesher*, Iowa Supr., 286 N.W.2d 215, 218 (1979) ("We find nothing, however, in either the wording of the exception nor in its underlying rationale which requires corroboration as a condition of its admissibility."); *Booth v. State*, 306 Md. 313, 508 A.2d 976, 983–84 (1986) (same); *see also* 2 McCormick on Evidence § 271, at 203 (5th ed.1999) (observing that the corroboration requirement "represents a significant departure from the general pattern of exceptions to the hearsay rule" and that corroboration is not necessary because "the underlying rationale [of the exception] offers sufficient assurances of reliability"); *id.* § 271, at 203 n. 28 (noting that neither the text of the federal rule nor the legislative history suggests a corroboration requirement).

8. *See, e.g., Booth*, 508 A.2d at 984.

the recording of the first 911 call was properly admitted as a present sense impression under D.R.E. 803(1).

The stronger argument is that the second 911 call included portions of a heated argument between Felton and Warren in which Felton recounted parts of their earlier confrontation and repeated her characterization of the assault and break-in. Although present sense impressions "need not be precisely contemporaneous with the triggering event," courts generally find statements admissible as present sense impressions if the statements were made within about ten or twenty minutes of the event.[9] Because Felton's statements during the second 911 call describe events that occurred over an hour before the call, the statements were too far removed from the first encounter to be present sense impressions of the assault and break-in.

Nevertheless, the trial court's decision to admit the recording of the second call under D.R.E. 803(1) was, at most, harmless error because the statements were admissible under D.R.E. 803(2), the excited utterances exception to the hearsay rule.[10] To establish the admissibility of a statement under D.R.E. 803(2), the proponent must show that: "(1) the excitement of the declarant [was] precipitated by an event; (2) the statement being offered as evidence [was] made during the time period while the excitement of the event was continuing; and (3) the statement [was] related to the startling event."[11]

In this case, the triggering events for the second call were Warren's return to Felton's apartment and, to some extent, the initial confrontation. Felton's statements during the second call fit within the excited utterance exception (1) because, according to the officer's testimony, Felton was still under the excitement of the triggering events when she made the call and (2) because Felton's statements during the second call were all related to the triggering events. As a consequence, even if the trial court erred in admitting the recording of the second call under the present sense impression exception, the error was harmless because the statement was admissible as an excited utterance.

## B. Confrontation Clause

Warren's second argument is that, even if the 911 recordings fit within recognized hearsay exceptions, the trial court's admission of the recordings violated his right to confront the witnesses against him.[12] To satisfy the Confrontation Clause, hearsay statements admitted against a defendant must either (1) fall within a "firmly rooted" hearsay exception or (2) "contain particularized guarantees of

9. *Abner,* Order at ¶ 4. There is no bright line rule governing the remoteness of such statements under D.R.E. 803(1). *See, e.g., United States v. Beck,* 8th Cir., 122 F.3d 676, 681–82 (1997) (admitting statement made immediately after drug purchase); *Miller v. Crown Amusements, Inc.,* S.D.Ga., 821 F.Supp. 703, 706 (1993) (admitting statement made less than ten minutes after event); *Blakey,* 607 F.2d at 785–86 (admitting statement made less than twenty-three minutes after event); *Hilyer v. Howat Concrete Co., Inc.,* D.C.Cir., 578 F.2d 422, 426 n. 7 (1978) (finding that an interval between fifteen and forty-five minutes is too long).

10. D.R.E. 803(2) provides for the admission of excited utterances, which are defined as "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

11. *Gannon v. State,* Del.Supr., 704 A.2d 272, 274 (1998); *Culp v. State,* Del.Supr., 766 A.2d 486, 489–90 (2001).

12. *See* U.S. Const. amend. VI, cl. 3; Del. Const. art. I, § 7.

trustworthiness 'such that adversarial testing would be expected to add little, if anything, to the statements' reliability.' "[13] If a statement falls within a firmly rooted hearsay exception, it is not necessary to undertake an individual analysis of the statement to determine whether it contains particularized guarantees of trustworthiness.[14] This Court has determined that the hearsay exceptions for spontaneous statements, which include the exceptions for present sense impressions and excited utterances, are firmly rooted under the confrontation provisions of the Delaware and federal constitution.[15] As a consequence, the admission of Felton's 911 calls under D.R.E. 803(1) and 803(2) did not violate Warren's right to confront the witnesses against him.

Warren nevertheless argues that the statements do not satisfy the Confrontation Clause because they were not independently corroborated and thus do not have the required "indicia of reliability." This argument is without merit. As noted above, an individualized reliability analysis is not necessary where the statement is admitted under a firmly rooted hearsay exception. Even if an individualized analysis were required, corroborating evidence is irrelevant to a statement's reliability under the Confrontation Clause.[16]

### Alleged Impropriety in the State's Closing Arguments

Warren's next argument on appeal is that the prosecutor made a variety

13. *Barrow v. State*, Del.Supr., 749 A.2d 1230, 1243–44 (2000) (quoting *Lilly v. Virginia*, 527 U.S. 116, 125, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999)).

14. *See Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) ("'Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception."); *see also Lilly*, 527 U.S. at 126, 119 S.Ct. 1887 (" '[A]dmission of virtually any evidence within [a firmly rooted exception] comports with the substance of the constitutional protection.' ") (quoting *Wright*, 497 U.S. at 817, 110 S.Ct. 3139 and *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531) (internal quotation marks omitted).

15. *See Gannon*, 704 A.2d at 275–77 (holding that a statement admissible under the excited utterance exception does not violate the defendant's confrontation rights under the Delaware or federal constitution); *Williamson v. State*, Del.Supr., 707 A.2d 350, 355–56 (1998) (finding that recordings of 911 calls admitted under the present sense impression and excited utterance exceptions were admitted under "firmly rooted exceptions") (citing *White v. Illinois*, 502 U.S. 346, 355–56, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)); *see also Roberts*, 448 U.S. at 66, 100 S.Ct. 2531 ("In *White*, for instance, we held that the hearsay exception for spontaneous declarations is firmly rooted because it 'is at least two centuries old,' currently 'widely accepted among the States,' and carries 'substantial guarantees of ... trustworthiness ... [that] cannot be recaptured even by later in-court testimony.' ") (quoting *White*, 502 U.S. at 355–56, 112 S.Ct. 736).

16. *See Wright*, 497 U.S. at 822, 110 S.Ct. 3139 ("[W]e are unpersuaded by the State's contention that evidence corroborating the truth of a hearsay statement may properly support a finding that the statement bears 'particularized guarantees of trustworthiness.' "); *see also id.* at 820, 110 S.Ct. 3139 ("[T]he 'particularized guarantees of trustworthiness' required for admission under the Confrontation Clause must ... be drawn from the totality of circumstances that *surround the making* of the statement and that render the declarant particularly worthy of belief.") (emphasis added). The *Wright* Court was concerned that "the use of corroborating evidence to support a hearsay statement's 'particularized guarantees of trustworthiness' would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility." *Id.* at 823, 110 S.Ct. 3139.

of improper comments during closing arguments and that these comments undermined the fairness of the trial. Because defense counsel, with one exception, did not object at trial to the prosecutor's allegedly improper remarks and because the trial court did not intervene *sua sponte*, the remarks are subject to review in this Court for plain error.[17]

### A. Propriety of the Prosecutor's Comments

■ With respect to two of the comments, we agree with the State that defense counsel declined to object for strategic reasons. Specifically, the prosecutor argued in his summation that Warren should not be allowed to "get away with" the crimes charged simply because Felton and her neighbor did not appear as witnesses at trial. The prosecutor also asserted that the jury could "rest assured these things occurred." In each situation, defense counsel responded forcefully in his closing to the prosecutor's remarks—apparently based on counsel's determination that his response would be superior to a curative instruction.

■ Similarly, Warren points to the prosecutor's assertion during the State's rebuttal summation that "basically what [defense counsel] said to you is that the officer is lying." Defense counsel immediately objected and the prosecutor withdrew the comment. Although the prosecutor's statement was improper because defense counsel had made no such assertion, we conclude that the defense objection and the withdrawal of the statement were adequate to cure any prejudice from the improper remark. Because we find that defense counsel's actions neutralized

the potentially damaging effect of all of the above comments, we will not address Warren's contentions on the comments further.

■ Warren's trial counsel neither objected nor responded to several other allegedly improper remarks made by the prosecutor during closing arguments. First, during summation, the prosecutor argued:

> Now let's imagine this person picking up his hand, use your mind's eye, and punching a woman in the face, because that's what happened. Now there are a lot of other things that may have happened, and I'm sure the defendant is going to get up and tell you through his attorney that he acted in self-defense if somehow she was injured. Is that possible? Yes, it is possible, but is it reasonable? And that's what we are here to decide today, reasonable doubt.

This remark is improper for two reasons. First, it anticipates and responds to a self-defense argument that Warren never presented to the jury.[18] Second, the prosecutor's statement incorrectly suggests that "reasonable doubt" means that the jury must find Warren's account of the events to be "reasonable."

Next, the prosecutor argued in summation:

> You evaluate for yourselves whether there was proof beyond a reasonable doubt that the State proved to you what was taken and how much it was worth, that's the theft charge [that was *nolle prossed*]. Everything else, ladies and gentlemen, I submit to you, there is proof beyond a reasonable doubt.

Similarly, during his analysis of the elements of burglary, the prosecutor argued:

---

**17.** *See* Supr. Ct. R. 8; *Trump v. State*, Del. Supr., 753 A.2d 963, 964–65 (2000).

**18.** *Cf. Milligan v. State*, Del.Supr., 761 A.2d 6, 8 (2000) (holding that it was "premature" to admit evidence of the defendant's uncharged bad act during the State's case-in-chief to rebut an anticipated defense argument).

[Warren] admits he intended to take property, steal property that belonged to [the neighbor] and give it to another person allegedly, because it belonged to this other drug man, who we never hear who this person is. That story is, I submit to you, a crock. Okay. But it shows you that this person is—his mind is working to try to find some way to get out of this charge.

He admitted on tape to a burglary. Then we get the comment about the trash bag, which is a beautiful thing, because it just kind of sums it up at the end and shows you that everything he has been saying is absolutely from out of left field.[19]

 During closing arguments, a prosecutor may not misrepresent the legal effect of the defendant's statements and may not express personal opinions about the credibility of witnesses.[20] By incorrectly characterizing Warren's taped statement as an admission to burglary, the prosecutor misrepresented the legal effect of Warren's statements during interroga-

tion and implied that there was no factual issue for the jury to decide.[21]

 The prosecutor also improperly asserted that Warren intentionally fabricated his account of the incident in order to get out of the charges against him. Prosecutors may refer to statements or testimony as a "lie" (or, in this case, as a "crock") only if the "prosecutor relates his argument to specific evidence which tends to show that the testimony or statement is a lie."[22] The prosecutor in this case made no attempt to connect this argument to evidence of inconsistency in Warren's statements to the police; rather, the prosecutor relied on his personal opinion that Warren's story was "from left field." Indeed, because the prosecutor prefaced two of these remarks with "I submit to you," the remarks constituted an improper personal comment on the strength of the State's case and on the credibility of Warren's testimony.[23]

### B. Plain Error Analysis

 Although these comments during closing arguments were improper, the

19. During his recorded interrogation, Warren suggested that he had permission to enter the apartment through the window to pick up a drug payment. Warren asserted that, when he was unable to find the payment, he left the garbage bag in the living room "[j]ust to let him [the neighbor] know he was trash."

20. See Hughes v. State, Del.Supr., 437 A.2d 559, 567 (1981) ("It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.") (quoting ABA Standards, Prosecution and Defense Functions (1971)); Clayton v. State, Del.Supr., 765 A.2d 940, 942 (2001) (Per Curiam) ("As a general rule, prosecutors may not express their personal opinions or beliefs about the credibility of witnesses or about the truth of testimony.").

21. As noted above, Warren told the police that he entered the apartment with the neighbor's permission for the purpose of picking up

a drug payment. Because entering a dwelling with the permission of the occupant does not constitute burglary, the prosecutor's characterization of Warren's statement as an admission to burglary was inaccurate.

22. Hughes, 437 A.2d at 571; see also Clayton, 765 A.2d at 943 (finding prosecutor's remark that a defense witness had "manipulated the truth" was improper "because the jury could interpret the comment as an official condemnation of the testimony by the State").

23. Although there is no per se rule against a prosecutor's use of the first person, the Court strongly discourages the use of the term "I" in closing arguments because it "only serves to emphasize for the jury that the prosecutor, i.e. the speaker, personally believes the point that is being submitted to the jury for its consideration." Brokenbrough v. State, Del. Supr., 522 A.2d 851, 859 (1987). This policy has particular force where the prosecutor

prosecutor's misconduct was not plain error. To constitute plain error, "credibility must be a central issue in a close case" and the State's improper statements must "be so clear and defense counsel's failure to object so inexcusable that a trial judge . . . has no reasonable alternative other than to intervene *sua sponte* and declare a mistrial or issue a curative instruction." [24]

The prosecutor's improper remarks in the present case do not meet this standard. For example, the remark anticipating a self-defense argument was misleading but was not so obviously prejudicial that it required the court to intervene on its own motion. The prosecutor's statement implying that he thought Warren's story was a "crock" is a clearer example of misconduct, but we have held that a similar remark did not constitute plain error.[25] As a result, we conclude that the prosecutor's misconduct did not undermine the reliability of the jury's verdict and does not warrant a new trial.

### Sufficiency of the State's Evidence of Burglary

■ Warren lastly argues that the trial court erred in denying his motion for judgment of acquittal because the State did not present sufficient evidence to prove beyond a reasonable doubt that he was guilty of second-degree burglary. To convict Warren of second-degree burglary, the State must prove that Warren knowingly entered the apartment of Felton's neighbor unlawfully with the intent to commit a crime.[26] Warren concedes that he entered the apartment but maintains that the State failed to prove that his entry was unlawful (without permission) or that he intended to steal something once inside.[27]

■ The trial court's decision to grant or deny a motion to acquit is subject to *de novo* review in this Court. A conviction must be sustained if "any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt." [28] In reviewing the sufficiency of the evidence on appeal, we do not distinguish between direct and circumstantial evidence.[29]

Because there is no direct evidence that Warren actually removed anything from the neighbor's apartment, the State relied on circumstantial evidence indicating that Warren intended to remove items from the apartment when he entered. For exam-

---

uses the first person to characterize the strength of the State's case or to comment on the credibility of the defendant.

24. *Trump*, 753 A.2d at 964–65.

25. See *Brokenbrough*, 522 A.2d at 859 (finding prosecutor's remark that "I suggest to you that the document is not worth the paper it is printed on" was "clearly improper but not plain error"); *see also Clayton*, 765 A.2d at 945 (finding prosecutor's remark that a defense witness had "manipulated the truth" was not plain error because the remark was designed as a response to statements made by defense counsel).

26. 11 *Del. C.* § 825 provides: "A person is guilty of burglary in the second degree when the person knowingly enters or remains unlawfully: (1) In a dwelling with intent to commit a crime therein; or . . . ."

27. 11 *Del. C.* § 841 defines theft as "tak[ing], exercis[ing] control over or obtain[ing] property of another person intending to deprive that person of it or appropriate it."

28. *Robertson v. State*, Del.Supr., 596 A.2d 1345, 1355 (1991) (citations omitted). Warren preserved his sufficiency-of-the-evidence challenge for appeal by presenting a timely motion to acquit under Super. Ct. Crim. R. 29 in the trial court. See *Monroe v. State*, Del. Supr., 652 A.2d 560, 563 (1995).

29. See *Monroe*, 652 A.2d at 563.

ple, the arresting officer testified that, during his search of the neighbor's apartment, he found that the window-screen had been removed from the rear window, and he found a garbage bag "in front of the electronic area where the VCR is and Nintendo." He also noticed that some of the electronic equipment had been unplugged and was in "disarray."

Viewed in a light most favorable to the State, this evidence is sufficient to support Warren's conviction for second-degree burglary. The jury could reasonably infer that Warren's entry was unlawful because a person with permission to enter a second-story apartment would not enter through the rear window of the apartment. Similarly, the jury could infer that Warren entered the apartment intending to steal the neighbor's electronic equipment because some of the devices had been unplugged and because Warren placed a garbage bag near the equipment.[30] The jury could also properly reject Warren's innocent explanation for his conduct.[31] Based on this evidence, we conclude that the Superior Court properly denied Warren's motion for judgment of acquittal on the charge of second-degree burglary.

### Conclusion

We conclude that the Superior Court did not commit reversible error by admitting Felton's 911 calls, by failing to remedy the prosecutor's improper remarks *sua sponte*, or by denying Warren's motion for judgment of acquittal. Accordingly, the judgment of the Superior Court is affirmed.

---

30. *Cf. Abner,* Order at ¶¶ 10, 12 (finding sufficient evidence of burglary from victim's hearsay statements "that items had been repositioned, and that the window had been broken").

31. *See Pryor v. State,* Del.Supr., 453 A.2d 98, 100 (1982) ("The jury is the sole judge of a witness' credibility and is responsible for resolving conflicts in testimony.").