Robert GREEN and Jane Green,
husband and wife, Plaintiffs
Below, Appellants,

v.

ST. FRANCIS HOSPITAL, INC., a corporation of the State of Delaware,
Defendant Below, Appellee.

No. 531, 2000.

Supreme Court of Delaware.

Submitted: Oct. 24, 2001.

Decided: Feb. 19, 2002.

Sidney Balick, Esquire and Adam Balick, Esquire, Balick & Balick, Wilmington, Delaware, for appellants.

John D. Balaguer, Esquire, White and Williams, LLP, Wilmington, Delaware, for appellee.

Before WALSH, HOLLAND and STEELE, Justices.

HOLLAND, Justice:

The plaintiffs-appellants, Robert and Jane Green, filed an action in the Superior Court against the defendant-appellee, St. Francis Hospital, Inc. This is an appeal following a jury verdict in favor of St. Francis Hospital. In this appeal, Green asserts that the trial judge erred with regard to four separate evidentiary rulings. Green also alleges claims that the trial judge incorrectly instructed the jury concerning the standard of medical negligence.

We have concluded that each of the trial judge's evidentiary rulings were correct. We have also concluded that there was no error in the trial judge's instruction to the jury. Therefore, the judgment of the Superior Court is affirmed.

### Facts

This action arises from an injury that occurred on December 20, 1996. At the time, Robert Green was a patient in the Intensive Care Unit at St. Francis Hospital. Green alleges that he collapsed on the floor after the duty nurse left him unattended on a commode and without a call button within his reach.

Green testified that, at his request, the duty nurse helped him to sit on the commode and then left the room. Green began to feel faint while on the commode but could not reach the call button to contact the nurse for assistance. Green heard loud conversation in the hall and called out to the nurse two or three times but did not get a response. The nurse did not return to check on him. According to Green, he tried to get back into bed but fell to the floor, detaching his oxygen. Green began striking the wall a number of times in an attempt to get the nurse's attention. Five minutes later a nurse peered into the room, noticed Green, and then returned with another nurse. The two nurses then assisted him back into bed and reattached the oxygen. As a result of this fall, Green sustained a compression fracture spinal injury.

The duty nurse initially denied any knowledge of the incident but later recalled finding Green on the floor of the room. The duty nurse testified that she assisted Green onto the commode, drew the privacy curtain, placed the call button within his reach and then left the room. She returned a couple of times to check on Green, who stated that he was fine but was not finished yet. While assisting another nurse, the duty nurse was informed by her supervisor that Green had activated the call button and wanted assistance in returning to his bed.

The duty nurse testified that she returned to Green's room with another nurse and assisted him to his bed. According to the duty nurse, Green stated that he sat down on the floor when he began to feel faint. Since Green did not appear to be injured and stated that he sat down on his own accord, the duty nurse did not note the occurrence in the patient chart, prepare an incident report, or notify a physician or the patient's family. According to the duty nurse, she did not follow these standard procedures for a fall because she did not believe that Green had fallen, based on his statement that he sat down.

### Present Sense Impression

According to Green, his single most critical allegation of negligence was that the duty nurse in the intensive care unit at St. Francis Hospital left him alone on the

commode in his room for an extended period of time and failed to place a call button within his reach so that he could signal for assistance. Nurse Meadows, the duty nurse in the intensive care unit at the time of this incident, testified that when St. Francis Hospital's risk manager interviewed her within ten days after the incident she did not recall finding Green on the floor. She also did not recall finding Green when asked again by the risk manager several weeks after the first inquiry. In 1999, over two years after the incident, Nurse Meadows again told the risk manager she knew nothing about the incident that had occurred in December 1996.

In March 2000, approximately three years and three months after the incident, and a year and a half after suit was filed, Nurse Meadows recalled not only finding Green on the floor, but she also recalled what Green characterizes as self-serving details about the incident. According to Nurse Meadows, she now recalls that on the day of this incident her nurse supervisor approached her and told her that Green had put his call button on and that the supervisor had answered the call bell.

Before Nurse Meadows testified, Green moved to exclude these more recently recalled statements. Green argued that any comments that Nurse Meadows attributed to the nurse supervisor were inadmissible hearsay. The trial judge overruled Green's objection and admitted the hearsay testimony as a present sense impression exception under Delaware Uniform Rules of Evidence ("D.R.E.") 803(1) and 803(24), the so called catch-all exception.

■ The first issue is whether the trial judge properly ruled that the hearsay testimony of Nurse Meadows was admissible as a "present sense impression" under D.R.E. 803(1). Green argues that although the statements may fit under the literal definition of a present sense impression, it is nonetheless inadmissible if there is no theoretical basis that makes it inherently trustworthy. In support of his argument, Green asserts that the circumstances surrounding the hearsay statements are inherently untrustworthy. Green argues that: the statements are not sufficiently reliable and trustworthy based on the fact that the testifying witness did not recall the statements until years after they were made; the declarant, although available was never called to testify; the statements were self-serving; and the witness had reasons to fabricate to cover-up the alleged negligence.

The trial judge concluded that the hearsay statements met the requirements of D.R.E. 803(1) and were therefore admissible pursuant to the hearsay exception for present sense impressions. The trial judge found that the requirements were met in this case because the declarant, the nurse supervisor, made a contemporaneous statement describing the event that she witnessed at the time, i.e. that the call light had been activated. The trial judge reasoned that statements falling within one of the hearsay exceptions are inherently trustworthy and are admissible if they fit within any one of the recognized exceptions.

■ D.R.E. 803(1) defines a present sense impression as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Under D.R.E. 803 exceptions to the hearsay rule, the availability of the declarant is immaterial. Nevertheless, hearsay declarations are admissible "only where the declaration has some theoretical basis making it inherently trustworthy."[1]

1. *Smith v. State*, 647 A.2d 1083, 1088 (Del. 1994).

The requirements of D.R.E. 803(1) are met if the declarant "personally perceive[s] the event described; the declaration [is] an explanation or description of the event, rather than a narration; and the declaration and the event described [are] contemporaneous."[2] Contemporaneous statements do not have to occur at precisely the same moment in time as the triggering event, but must occur shortly thereafter in response to the event.[3]

There is no *per se* general requirement of independent corroboration for a statement to be admitted under the present sense impression exception.[4] Independent corroboration may be required in some cases, however, to determine whether the statement was contemporaneous or whether the declarant perceived the event.[5] The rationale behind the present sense impression exception is that "spontaneous statements describing an event are trustworthy because the declarant has no time to fabricate the statements and because there is less concern that the statements reflect a defect in the declarant's memory."[6]

Green's challenge to the availability of the actual declarant is misplaced. The present sense impression is a hearsay exception that is firmly rooted under the confrontation provisions of the Delaware and federal constitutions.[7] Firmly rooted exceptions to the hearsay rule are received into evidence, without requiring the declarant's presence, even in a criminal trial where "the hearsay rule is suffused with constitutional hues and, therefore, applied more stringently than in civil cases."[8]

Similarly, Green's challenge to the credibility of the witness who heard the statements goes to the weight to be accorded to that evidence by the jury, not to its admissibility. In this case, the jury was able to assess the duty nurse's credibility when she testified at trial. Moreover, the duty nurse was subjected to vigorous cross-examination regarding her initial failure to recall the incident for years and what Green depicted as the self-serving nature of the statement she attributed to her supervisor.

In this case, the requirements of D.R.E. 803(1) were satisfied.[9] The declarant, the supervising nurse, personally perceived the event described in her statement; that she observed Green's call light had been activated. That statement is a description of the event. The statement was contemporaneous to the triggering event in that the supervising nurse informed the duty nurse that the call light had been activated shortly after answering the call light. Having met the requirements of D.R.E. 803(1), the trial judge properly admitted the hearsay statements attributed to the nurse supervisor through the testimony of the duty nurse at trial.[10]

2. *Abner v. State,* 2000 WL 990973, at *4 (Del. Supr.).

3. *Id.*

4. *Warren v. State,* 774 A.2d 246, 252 (Del. 2001).

5. *Id.*

6. *Id.*

7. *Bruce v. State,* 781 A.2d 544, 552 (Del.2001); *Warren v. State,* 774 A.2d at 254.

8. 5 *Weinstein's Federal Evidence* § 802.04[3][b] (2d ed.2001); *Bruce v. State,* 781 A.2d at 552; *Warren v. State,* 774 A.2d at 254; *Gannon v. State,* 704 A.2d 272, 275 (Del.1998).

9. In fact, the Greens acknowledged in their Opening Brief that the statement qualifies as a present sense impression.

10. Because the testimony was admissible under the present sense impression exception, an analysis under D.R.E. 803(24) is unnecessary.

## Photographs and Videotape

Prior to the opening statement to the jury, St. Francis Hospital's attorney advised the trial judge that he would refer to a videotape and photographs depicting a patient's room at the hospital. Green's attorney objected on the grounds that it was prejudicial, because the photographs and videotape unfairly depicted the call button in a position that was in dispute by the parties. The trial judge permitted St. Francis Hospital's attorney to refer to both items in his opening statement to the jury.

During trial, photographs and a videotape of Green's hospital room were offered by St. Francis Hospital as an adjunct to Nurse Meadows' testimony, in order to illustrate the arrangement of the hospital room, where the fall occurred, and to illustrate as well as demonstrate the operation of the bedside commode and call light, including the manner in which (according to Nurse Meadow's testimony) the device was placed within Green's reach when he was using the bedside commode. Green objected to the admission of the photographs and the videotape into evidence because each depicted the call button being placed in the disputed location. The trial judge allowed both items to be admitted into evidence. The trial judge gave a limiting instruction to the jury that the photographs and videotape were to be used for demonstrative evidence only and not as direct evidence of the disputed location of the call button.

■ The second issue raised by Green in this appeal is that the trial judge abused his discretion in admitting the photographs and videotape into evidence. Green argues that the probative value of that evidence was substantially outweighed by the prejudice to Green and by possible confusion of the jury. Green also argues that the evidence did not meet the authentica-

tion requirements of D.R.E. 901. Additionally, Green asserts that the trial judge's limiting instruction on the use of the evidence was confusing.

The record reflects that the trial judge permitted the photographs to be introduced into evidence and gave a limiting instruction that the jury was not to infer the location of the call bell from its position in the photographs since that issue was in dispute. The trial judge reasoned that the photographs would be useful for the jury to see the layout of the room. Similarly, the trial judge allowed the videotape to be introduced into evidence, once again instructing the jury that the locations of items in the video were issues in dispute. Again, the trial judge reasoned that the videotape could be admitted to assist the jury in visualizing the arrangement of the hospital room.

In the present case, the photographs and the videotape were offered to show the jury the layout of a hospital room. D.R.E. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." D.R.E. 403 permits the exclusion of relevant evidence, however, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury."

The photographs and videotape of the hospital room are probative evidence, because the arrangement of the room was an integral part of each party's case at trial. St. Francis Hospital acknowledges that the photographs and videotape depicting the call button in a location favorable to St. Francis Hospital's view of the incident that occurred is arguably prejudicial to Green. St. Francis Hospital asserts that any pos-

sible prejudice was outweighed by the probative value of the evidence and the trial judge's limiting instruction.

Green argues that this evidence was more prejudicial than probative because it showed the call light activation device in the location where Nurse Meadows testified under oath that she put it, and thereby "bolster[ed] St. Francis Hospital's contention regarding the dispositive issue in the case." This argument might be meritorious if Green could demonstrate that the jury was led to believe that the photograph and videotape were offered as direct evidence of where the call light activation device was placed by Nurse Meadows, rather than simply as being illustrative of her own testimony at trial.

■ The determination of unfair prejudice under D.R.E. 403 is "within the sound discretion of the trial court, and will not be reversed in the absence of clear abuse of discretion." [11] The record reflects that the danger of possible prejudice to Green was addressed by the trial judge's instructions informing the jury that the location of the call bell should not be inferred from the evidence, because it was in dispute by the parties. [12] The record specifically reflects, contrary to Green's assertion, the trial judge's limiting instruction in this regard was clear:

> THE COURT: All right. My understanding, ladies and gentlemen of the jury, is that these photographs show a call bell and it's lying in a position that, arguably is favorable to Defendant's view of what the facts in this case are.
>
> We're going to admit the photographs, but you need to understand that wheth-

er there was a call bell, where it was, the issues relating to the call bell to some extent may be things you have to decide. And this photograph is not being admitted as evidence of where the call bell was at the time of the incident in question. There happens to be a call bell shown in the photograph. That's all it is.

Moreover, throughout their arguments to the jury, counsel for both parties emphasized to the jury that the location of the call bell was in dispute. We have concluded that the trial judge properly exercised his discretion by admitting the photographs and videotape into evidence for illustrative purposes with a limiting instruction to the jury. [13]

### Authentication of Evidence

■ In a related argument, Green contends that the photographs and videotape were not properly authenticated. D.R.E. 901 provides in part: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." In this case, the nurse testified that the photographs and videotape were an accurate depiction of a hospital room in the Intensive Care Unit of St. Francis Hospital. Under D.R.E. 901 one of the methods that may be used to satisfy the authentication requirement is testimony of a witness with actual knowledge. [14] Clearly, Nurse Meadows, who worked in the Intensive Care Unit of St. Francis Hospital, had knowledge that the photographs and videotape accurately depicted a room at St. Francis Hospital. According-

---

11. *Mercedes–Benz of North America, Inc. v. Norman Gershman's Things to Wear, Inc.*, 596 A.2d 1358, 1366 (Del.1991).

12. *See Balan v. Horner*, 706 A.2d 518, 522 (Del.1998).

13. *Id.*

14. D.R.E. 901(b)(1).

ly, the record supports the trial judge's conclusion that the photographs and videotape were properly authenticated before they were admitted into evidence.[15]

### Plaintiff's Expert Testimony Excluded

 In his next argument, Green submits that the trial judge abused his discretion in granting St. Francis Hospital's Motion in Limine to exclude the testimony of Green's expert witness with regard to the post-fall standard of care. Green argues that the trial judge abused his discretion in granting the motion because such evidence was necessary to establish a continuous course of negligent conduct by the hospital. Green also asserts that the evidence was relevant to demonstrate that the hospital attempted to conceal its negligence.

At a pretrial hearing on St. Francis Hospital's Motion in Limine, the trial judge granted the motion to exclude the testimony of Green's expert witness relating to the post-fall standard of care. The trial judge reasoned that the evidence was not relevant, because there was no dispute over the appropriate standard of care following a patient's fall. The trial judge also reasoned that admitting such evidence would be confusing to the jury, because there was no evidence that an alleged breach of the post-fall standard of care was the proximate cause of Green's injuries.

 D.R.E. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact in consequence to the determination of the action more probable or less probable than it would be without the evidence." Under D.R.E. 402, evidence is not admissible unless it is relevant. In order to determine whether evidence is relevant, the trial judge must examine "the purpose for which [the] evidence is offered."[16] Such purpose must "be of consequence to the action" and "advance the likelihood of the fact asserted."[17]

 To establish a claim for medical negligence, Green was required to show that a breach of the standard of care was the proximate cause of his injuries.[18] Green asserts that the expert testimony regarding the standard of care following a patient's fall was offered to establish the continuous course of the hospital's negligence. D.R.E. 702, which governs the use of expert testimony, provides: "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." The trial judge has a special obligation to ensure that scientific testimony is relevant.[19]

In this case, there was no dispute over the standard of care following a patient's fall. Rather, the dispute was a factual one: whether Green told Nurse Meadows that he had fallen—thereby triggering the need for the post-fall duties—or whether Green told Nurse Meadows that he just "sat down." The record reflects that Nurse Meadows testified that certain procedures should be followed after a patient's fall and conceded that those procedures were not followed in Green's care.

---

**15.** See Floudiotis v. State, 726 A.2d 1196, 1208 (Del.1999).

**16.** Farmer v. State, 698 A.2d 946, 948 (Del. 1997).

**17.** Id.

**18.** See Del.Code Ann. tit. 18, § 6853 (1999).

**19.** M.G. Bancorporation, Inc. v. Le Beau, 737 A.2d 513, 521–22 (Del.1999).

Thus, the standard of care following a patient fall was not a fact in issue in the case.

Assuming that Green was able to establish that St. Francis Hospital breached the standard of care for procedures following a patient's fall, there is no evidence to suggest that a breach of those procedures proximately caused the injuries sustained by Green in the fall. Therefore, expert evidence regarding the post-fall standard of care procedures was not relevant. Accordingly, we hold that the trial judge properly exercised his discretion in granting St. Francis Hospital's Motion in Limine to exclude Green's expert from testifying regarding the post-fall standard of care.

■ Green also argues that the evidence was relevant to establish a cover-up. The record reflects that Green was able to present evidence of post-fall standards of care that he felt supported a cover-up theory. The trial judge properly reasoned, if there was no dispute regarding what the post-fall standards were and Green was able to establish through lay testimony that those standards were not followed in Green's case, there was no reason to permit the very same "cover-up" evidence to be admitted through what would have been the cumulative testimony of Green's expert witness.

### Defendant Expert Testimony Admitted

■ The next issue raised by Green is that the trial judge abused his discretion in admitting testimony by St. Francis Hospital's expert witness.[20] Green alleges that the trial judge abused his discretion in permitting St. Francis Hospital's witness Nurse Matthews to testify because she was not qualified as an expert under title 18, section 6854 of the Delaware Code. At a pretrial hearing on Green's Motion in Limine to exclude the testimony of St. Francis Hospital's expert witness, the trial judge initially deferred ruling on the admissibility of St. Francis Hospital's expert's testimony stating that voir dire of the witness' qualifications would be conducted at trial. Subsequently, the trial judge permitted Nurse Matthews to testify as an expert at trial without either conducting voir dire or making an express ruling on Green's Motion in Limine to preclude her testimony. Green cross-examined Nurse Matthews on her qualifications but did not request a voir dire or renew the pretrial objection to her testimony.

D.R.E. 702, which governs the use of expert testimony, provides: "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." The provision relating to the qualification of an expert medical witness provides in part: "[n]o person shall be competent to give expert medical testimony as to applicable standards of skill and care unless such person is familiar with the degree of skill ordinarily employed in the field of medicine on which he or she will testify."[21] "Familiar" has been defined as "having more than a

---

20. The Greens also initially argued in their Opening Brief that the trial court erred in applying the 1998 amendment to title 18, section 6859 of the Delaware Code because the events in this case were governed by the former version of section 6854. However, the Greens conceded in their Reply Brief that they had waived the right to have the pre-amendment version of the law apply.

21. Del.Code Ann. tit. 18, § 6854 (1999).

fair knowledge of the skill ordinarily employed."[22]

The record shows that Nurse Matthews holds a Bachelor's Degree in Nursing and was employed for nine years as a nurse at Hahnemann University Hospital, serving in the Intensive Care Unit for the last five years. Nurse Matthews also served on the Hahnemann Hospital Nurse Practice Committee, which adopted and revised standards of care for Intensive Care Unit Nursing. Her employment duties involved providing bedside care to patients, including patient assistance with using commodes on a daily basis. The record supports the trial judge's decision to permit Nurse Matthews to testify as an expert witness under title 18, section 6854 of the Delaware Code.

### Medical Negligence Instruction

The final issue raised by Green is an assertion that the trial judge's instruction to the jury that "there is no local standard of care" is an inaccurate statement of the law. In the course of cross-examining St. Francis Hospital's expert witness, Green's attorney questioned the witness' expertise on local standards of care. Because the parties had stipulated that the amended version of the applicable medical negligence statute would apply[23] without a locality requirement, the trial judge gave an instruction to the jury in response to the line of questions by Green's attorney. The trial judge stated "Ladies and gentlemen of the jury, let me point out to you that [Green's attorney] is entitled to ask the witness questions about with whom she has consulted, including whether she's consulted with local medical authorities about standard of care. You should be aware, however, that there is no local standard of care."

Green did not object to the instruction at the time it was given. Accordingly, the issue is waived on appeal unless it amounts to plain error.[24] Green contends that although the statement by the trial judge—that there is no local standard of care—is an accurate statement of the law, it is nonetheless confusing. According to Green, a reasonable juror might be misled into thinking that not only was there no locality requirement, but that in fact there was no standard of care.

A party has an "unqualified right to have the jury instructed with a correct statement of the substance of the law."[25] The instruction need not be perfect so long as it is "reasonably informative and not misleading, judged by common practices and standards of verbal communication."[26] Reversal is only required where the error undermines the "jury's ability to intelligently perform its duty."[27]

The central issue in this case was a factual dispute over what had occurred and not the appropriate standard of care to be applied. Both parties acknowledged throughout the trial that there was a standard of care. In light of the expert testimony presented and the extensive ar-

22. *Med. Center of Delaware, Inc. v. Lougheed,* 661 A.2d 1055, 1058 (Del.1995), *citing Loftus v. Hayden,* 391 A.2d 749, 752 (1978).

23. St. Francis Hospital does not dispute that, based on when the alleged malpractice occurred, the Greens were technically entitled to an instruction under the "old" law. However, the Greens concede that they waived that right by a stipulated agreement.

24. Supr. Ct. R. 8.

25. *McKenzie v. Blasetto,* 686 A.2d 160, 163 (Del.1996) (citing *Culver v. Bennett,* 588 A.2d 1094, 1096 (Del.1991)).

26. *Id.* (citing *Haas v. United Technologies Corp.,* 450 A.2d 1173, 1179 (Del.1982)).

27. *Id.*

guments by the parties regarding the applicable standard of care, there is no reasonable basis in the record to conclude that the jury would have understood the trial judge's instruction to mean that there was no standard of care. Accordingly, reading the instructions as a whole, the trial judge's statement regarding the absence of a locality standard does not constitute plain error.[28]

### Conclusion

The judgment of the Superior Court is affirmed.

---

**28.** *Culver v. Bennett,* 588 A.2d 1094, 1096 (Del.1991).