# SUPERIOR COURT
## of the
# STATE OF DELAWARE

Jeffrey J Clark
Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
Telephone (302)735-2111

August 18, 2020

Kevin B. Smith, DAG
Department of Justice
102 West Water Street
Dover, DE  19901

John R. Garey, Esq.
Law Office of John R. Garey
48 The Green
Dover, DE 19901

**RE:** ***State v. Christopher Tunnell***
***ID No. 1910005939***

Submitted:  July 29, 2020
Decided:  August 18, 2020

Counsel:

This letter provides the Court's reasoning and decision regarding the State of Delaware's motion to admit evidence in *limine*.  It seeks to admit a 911 recording and an accompanying call for service detail report (hereinafter the "log") to prove circumstances surrounding an alleged rape and assault.[1]  For the reasons discussed below, the 911 recording will be admissible at trial.  The log will also be admissible, with the exception of several conclusory statements that must be redacted.

---

[1] The State originally sought permission from the Court, in the alternative, to conduct a trial deposition pursuant to Criminal Rule 15.  The State has withdrawn that request.

## The Facts

The facts recited are those found by the Court to a preponderance of the evidence as required by Delaware Rule of Evidence ("D.R.E.") 104. The record presented by the parties, and agreed to be complete for this purpose, includes the 911 audio recording, a written transcript reflecting that recording, a map of the area discussed in the recording, and the log.

On April 6, 2019, at approximately 3:20 p.m., Kent County's public safety answering point ("KENTCOM") received a 911 call. The caller, M.S., made the call while walking in a parking lot located in the Little Creek Wildlife Area. She reported finding a woman lying unresponsive in the grass next to the parking lot. She also reported that the woman had her underwear and pants around her ankles.

M.S. limited her statements on the 911 recording to descriptions of the woman's location and condition. Namely, she described where to find the wildlife area and how to find the parking lot located within the area. M.S. first described the woman as unresponsive. Later, she stated that the woman appeared intoxicated. Likewise, the dispatcher's questions focused on the incident's location and the woman's injuries. None of the dispatcher's questions addressed the nature of any criminal activity.

M.S. remained with the woman until medical and law enforcement personnel arrived. At that time, the woman appeared intoxicated and incoherent. She had facial injuries and blood on her face. She told the responders that someone raped her, but had no memory of the sexual assault.

After further investigation, the police arrested Defendant Christopher Tunnell for the alleged attack. They charged him with Rape in the First Degree and Assault in the Third Degree. Implicit in the State's motion is that it does not intend to call M.S. as a witness at trial.

**The Parties' Arguments**

The State offers the 911 recording and log to prove the circumstances surrounding the alleged rape and assault. At the outset, it argued that the recording and log are relevant, and that they are self-authenticating pursuant to D.R.E. 902 (11).[2] It also contended that both satisfy the first level of hearsay analysis because they qualify as business records pursuant to D.R.E. 803(6).[3]

At the outset, Mr. Tunnell did not challenge that the recording and log qualify as business records. Originally, he contested whether the State met its obligation to authenticate that evidence pursuant to D.R.E. 902(11). At oral argument, he withdrew that objection. When doing so, he conceded that the State satisfied the requirements for self-authentication under that rule.

With regard to the matters still in contention, the State first concedes that most of M.S.'s out of court statements are hearsay. It argues, however, that they are admissible as present sense impressions.[4] Furthermore, the State contends that the dispatcher's statements are non-hearsay because it offers them into evidence for a reason other than the truth of the matter asserted. Finally, the State contends that the statements are non-testimonial. Given that status, the Confrontation Clause in the Sixth Amendment to the United States Constitution would not bar them.

In response, Mr. Tunnell argues that M.S.'s out of court statements heard in the recording and reflected in the log are not present sense impressions. He focuses not on the length of time between the observations and the statements, but on the

---

[2] *See* D.R.E. 902(11) (providing the rule for self-authentication for "Certified Domestic Records of a Regularly Conducted Activity.").

[3] *See* D.R.E. 803(6) (providing for the hearsay exception for "Records of a Regularly Conducted Activity").

[4] *See* D.R.E. 803(1) (providing that a present sense impression, or "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it," is "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness").

3

length of time between the 911 call and the alleged criminal conduct. He also argues that based on the centrality of the testimony, justice requires that he be given the ability to confront M.S. at trial regarding her observations. In this vein, he argues that the statements were testimonial in nature and to admit them would violate his confrontation rights.

**The out of court statements made by M.S. in the 911 recording and log qualify as present sense impressions; the dispatchers' statements in the 911 recording are non-hearsay that are offered for a relevant purpose.**

M.S.'s statements in the 911 recording and log qualify as present sense impressions. This hearsay exception applies if: (1) the declarant personally perceived the events described; (2) the declaration was an explanation or description of the events, rather than a narration; and (3) the declaration and event described were contemporaneous.[5] The statements need "not be precisely contemporaneous with the triggering event but must be in response to it and occur within a short time after the stimulus."[6]

Here, the entire exchange between M.S. and the dispatcher consisted of questions and answers in real time and in response to M.S.'s instantaneous impressions. Namely, M.S. called 911 immediately after she found the alleged victim.[7] Her statements included her descriptions of the woman's then-existing condition and the area where she found her. She also told the dispatcher how to find

---

[5] *Abner v. State*, 757 A.2d 1277, 2000 WL 990973, at *1 (Del. 2000) (TABLE).

[6] *Dixon v. State*, 996 A.2d 1271, 1276 n.5 (Del. 2010) (citing *Warren v. State*, 774 A.2d 246, 253 (Del. 2001) to explain that "[c]ourts generally find statements admissible as a present sense exception to the hearsay rule, under D.R.E. 803(1), if the statements are made either immediately or within about ten or twenty minutes of the event.").

[7] *See* 2 *McCormick on Evid*. § 271 (8th ed.) (explaining that the "growing use of electronic communication devices, such as cell phones and text messaging expands the number of occasions when contemporaneous statements of observations are narrated to others, [so] the [present sense impression] exception may see more frequent application").

4

the parking area. Lastly, she contemporaneously described changes in the alleged victim's condition such as when she awoke and how she responded to her presence. Accordingly, M.S.'s statements included only her contemporaneous description of events that she perceived. They qualify as present sense impressions.

Furthermore, when fixing the record for this motion *in limine*, these circumstances illustrate how statements, by themselves, may intrinsically demonstrate that they qualify as present sense impressions.[8] *McCormick on Evidence* provides a helpful observation regarding how cell call recordings can demonstrate this without the need for additional evidence:

> [t]he explosive expansion of electronic communication devises in modern life, such as cell phones . . . facilitate a flow of almost instantaneous communications and frequently create a record of it[. This] is likely to result in the availability of many more statements that qualify under this exception in terms of their spontaneity as potential evidence in litigated cases.[9]

M.S.'s recorded call that describes what she saw, as she saw it, fits firmly within this hearsay exception.

Apart from M.S.'s out of court statements, the dispatcher asked a series of questions in the 911 recording. The State offers them for context as opposed to offering them for the truth of the matter asserted. As such, those questions are non-hearsay and are admissible unless there is another reason to bar their admission. Mr. Tunnell raises no further objection to their admissibility. Accordingly, the questions are admissible for that purpose. To the limited extent they are not relevant for context, the dispatcher's statements identify what emergency responders were in route and when to expect them. Those statements are also non-hearsay because the

---

[8] *Id.*
[9] *Id.*

State offers them to explain M.S.'s decision to remain on site, as opposed to offering them for the truth of the matter asserted.

Finally, M.S.'s same out of court statements are contained in the recording and the log. At oral argument, Mr. Tunnell conceded that if the 911 recording is admissible, the same statements in the log are also admissible. Accordingly, without further objection, both levels of hearsay analysis relevant to the log are satisfied: (1) the log is a business record; and (2) the statements contained in the log qualify as present sense impressions for the same reasons discussed above.

Finally, there are limited conclusory statements by dispatch and law enforcement personnel in the log. Unlike the other statements, they reference the existence or nature of a crime. The State correctly concedes that those statements are not admissible. The parties must confer prior to trial to ensure such statements are redacted from the log before the State may offer it into evidence.

### The statements are non-testimonial; they are not barred by the Sixth Amendment's Confrontation Clause.

In the alternative, Mr. Tunnell argues that admitting the recording and log would violate his Sixth Amendment right to confront witnesses. As explained by the Delaware Supreme Court in *Dixon v. State*,[10] hearsay related analysis does not end after a well-recognized hearsay exception applies. The Court must also confirm that admitting the out of court statements does not violate the Sixth Amendment's Confrontation Clause.[11]

The Sixth Amendment to the United States Constitution applies to the states through the Fourteenth Amendment.[12] It contains the Confrontation Clause, which

---

[10] 996 A.2d 1271 (Del. 2010).

[11] *Id.* at 1277.

[12] *Milligan v. State*, 116 A.3d 1232, 1236 (Del. 2015) (citing *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009)).

provides that an accused has the right "to be confronted with the witnesses against him."[13] The Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he [or she] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."[14]

The test regarding the confrontation portion of the bar against hearsay is a binary one. On one hand, the right applies to testimonial statements.[15] On the other hand, non-testimonial statements are not subject to the Confrontation Clause and are admissible as long as they meet the requirements of a hearsay exception.[16]

In *Dixon v. State*, the Delaware Supreme Court explained the differences between testimonial and non-testimonial statements. In fact, it did so in the context of a 911 call. In finding statements made to a dispatcher to be non-testimonial, it first explained the need to determine the purpose behind the questioning. In this regard, the Court described testimonial statements as those responding to interrogations by law enforcement personnel where the interrogator intends (1) to learn facts that demonstrate there was a crime or (2) to learn a perpetrator's identity.[17] In contrast, the Court explained that non-testimonial statements often come in response to questions on a 911 call. Such exchanges frequently facilitate law enforcement's assistance.[18]

---

[13] U.S. Const. amend. VI.

[14] *Dixon*, 996 A.2d at 1277 (quoting *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)).

[15] *Id.* at 1278 (citing *Davis v. Washington*, 547 U.S. 813, 814 (2006)).

[16] *Id.* (citing *Davis*, 547 U.S. at 821).

[17] *Id.* (citing *Davis*, 547 U.S. at 826).

[18] *Id.* (citing *Davis*, 547 U.S. at 827). *See also Davis*, 547 U.S. at 822 (explaining that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution").

In its decision in *Dixon,* the Delaware Supreme Court identified four objective circumstances in a 911 call that tend to make statements non-testimonial.[19]  First, statements tend to be non-testimonial if a 911 caller addresses an event that is happening at the time of the call.[20]  Second, they tend to be non-testimonial if the 911 caller is asking for help.[21]  Third, if the 911 caller is in an unsafe setting, the statements are more likely non-testimonial.[22]  Fourth, statements tend to be non-testimonial if the exchange between the dispatcher and 911 caller is necessary to resolve the present emergency.[23]  These circumstances exist in many 911 calls. When they do, the 911 caller's statements in response to dispatcher questions are non-testimonial.[24]

Comparing the circumstances in this case to the four objective circumstances outlined in *Dixon* demonstrates that admitting this evidence, absent M.S.'s testimony at trial, will not violate Mr. Tunnell's confrontation rights.   First, the event that M.S. called to report—her finding of an unresponsive, partially nude woman alone in a wildlife area — occurred at the time of the call.  Second, M.S. sought emergency medical and law enforcement help for the woman.  Third, M.S. called from a potentially unsafe setting.  In this regard, any danger that caused the woman's condition could have still then existed.   Fourth, the conversation between M.S. and the dispatcher focused on how to help the injured woman.   M.S. directed the emergency resources to where she found the alleged victim, while describing the woman's condition at the time she found her.  The dispatcher asked additional questions to help best direct police and ambulance to the scene.   None of M.S.'s

---

[19] *Dixon*, 996 A.2d at 1278–79.
[20] *Id.* at 1278.
[21] *Id.*
[22] *Id.* at 1279.
[23] *Id.* at 1278–79.
[24] *Id.* at 1278–79.

proffered statements address what crime could have caused the woman's condition. Nor were the dispatcher's questions focused on such information. Rather, M.S. merely responded to questions designed to provide emergency aid.

On balance, the objective facts on this D.R.E. 104 record, demonstrate that the primary purpose of the dispatcher's questions was *not* to prove past events for the purpose of future criminal prosecution. Accordingly, M.S.'s statements were non-testimonial. Admitting them without her presence at trial for purposes of cross-examination will not violate Mr. Tunnell's confrontation rights.

## Conclusion

For the reasons discussed, the State's motion *in limine* to admit the 911 call recording and log is **GRANTED**. Any conclusory statements made by the dispatcher in the log, however, must be redacted before the log is admitted into evidence. Finally, the Court will consider an appropriate limiting instruction if Mr. Tunnell proposes one.

**IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Judge

9