The STATE of Ohio, Appellee,

v.

WOODBRIDGE, Appellant.

[Cite as *State v. Woodbridge,* 153 Ohio App.3d 121, 2003-Ohio-2931.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 02 CA 60.

Decided June 6, 2003.

Paul J. Gains, Mahoning County Prosecuting Attorney, and Robert E. Duffrin, Assistant Prosecuting Attorney, for appellee.

Edward A. Sowinski Jr., for appellant.

---

WAITE, Presiding Judge.

{¶ 1} This is an appeal from a judgment of the Mahoning County Court of Common Pleas entered after appellant, Adam N. Woodbridge, pleaded guilty to one count of trafficking in crack cocaine. Appellant also entered no contest pleas to charges of participating in a criminal gang under R.C. 2923.42(A)(B) and to a specification seeking the forfeiture of a 1993 GM Yukon truck, VIN # 1GEK18K6PJ349011.

{¶ 2} Appellant argues that R.C. 2923.42, also known as Ohio's "criminal gang" statute, violates rights guaranteed him under the First and Fifth Amendments to the United States Constitution because its provisions are both vague and overbroad. Appellant further complains that the trial court should have dismissed the specification that sought forfeiture of the truck seized during his arrest, arguing that it was not subject to forfeiture under R.C. 2925.42(A)(1)(b).

{¶ 3} For the following reasons, we hold that Ohio's criminal gang statute is neither unconstitutionally vague nor overbroad and that the trial court did not err in denying the motion to dismiss the forfeiture specification. Because, however, the trial court failed to provide for disposition of the seized vehicle, we must remand this matter so that the trial court can enter judgment accordingly.

{¶ 4} On February 8, 2001, the grand jury issued a 24–count secret indictment charging appellant and fellow members of a street gang known as the Ayers Street Players with trafficking in cocaine in violation of R.C. 2925.03(A)(C)(4)(a) and engaging in a pattern of criminal gang activity in contravention of R.C. 2923.42. The indictment included a number of forfeiture specifications pursuant to R.C. 2925.42, one of which involved a 1993 Yukon truck allegedly belonging to appellant.

{¶ 5} On November 27, 2001, prompted by a plea agreement with appellee, the state of Ohio, appellant entered a guilty plea to one count of trafficking in cocaine, a felony of the fifth degree. Appellant also pleaded no contest to the count alleging that he had engaged in a pattern of criminal gang activity and to the forfeiture specification directed at the truck.

{¶ 6} Appellee dismissed the other counts in the indictment, and the trial court sentenced appellant to two years in prison for his gang activity, a second degree felony, and ordered that he serve that time concurrently with a one-year sentence for trafficking. The trial court filed its order reflecting this sentence on February 22, 2002. The entry omits, however, any disposition concerning the forfeiture specification regarding the 1993 Yukon truck.

{¶ 7} Appellant filed a notice of appeal on March 20, 2002, raising three assignments of error. His first and second assignments, which attack the constitutionality of R.C. 2923.42, state as follows:

{¶ 8} "Section 2923.24 of the Ohio Revised Code is void for vagueness in that it does not sufficiently describe conduct so the defendant cannot objectively determine what action violates the statute's provision.

{¶ 9} "Ohio Revised Code Section 2923.42 as applied to the defendant is overbroad as it infringes upon constitutionally protected right of freedom of association which is in violation of the 1st and 14th Amendments to the U.S. Constitution and Article 1, Section 3 of the Ohio Constitution."

{¶ 10} Appellant attacks Ohio's Criminal Gang statute as unconstitutionally vague and overbroad. Since these are alternate but related constitutional challenges, for the sake of clarity we will address them together. Based on the law as currently found in Ohio, we hold that the statute is not unconstitutional under either doctrine.

{¶ 11} Appellant claims that the trial court should have granted his motion to dismiss the charge pertaining to criminal gang activity because R.C. 2923.42, the statutory provision that the charge is based upon, is unconstitutional. This court reviews the trial court's disposition on a motion to dismiss de novo, without deference to the decision reached by the lower court. *State v. Stallings*, 150 Ohio App.3d 5, 2002-Ohio-5942, 778 N.E.2d 1110, ¶ 6, citing *State v. Benton* (2000), 136

Ohio App.3d 801, 805, 737 N.E.2d 1046. In assessing the constitutionality of the anti-gang statute, this court initially must assume, as it does with all legislative enactments, that it is valid. *In re Columbus Skyline Secs., Inc.* (1996), 74 Ohio St.3d 495, 498, 660 N.E.2d 427. If at all possible, we must construe the statute in such a manner as to uphold its constitutionality. *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 446 N.E.2d 449. Further, the party challenging constitutionality of a particular law shoulders the burden of demonstrating its defect beyond a reasonable doubt. *State v. Bennett,* 150 Ohio App.3d 450, 2002-Ohio-6651, 782 N.E.2d 101, ¶ 16, citing, *Hilton v. Toledo* (1980), 62 Ohio St.2d 394, 16 O.O.3d 430, 405 N.E.2d 1047.

{¶ 12} A law is void for vagueness, and therefore violates due process, if its prohibitions are not clearly defined. *Grayned v. Rockford* (1972), 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222. Any statute that "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden" is void for vagueness. *Papachristou v. Jacksonville* (1972), 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110. The United States Supreme Court restated that position in *Kolender v. Lawson* (1983), 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903, noting, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can under-stand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Id. at 357, 103 S.Ct. 1855, 75 L.Ed.2d 903.

{¶ 13} The void-for-vagueness doctrine protects due process in three ways. First, it requires that a statute give fair warning of the actions it prohibits to the ordinary citizen so that he can conform his behavior to the dictates of the statute. Second, it precludes arbitrary, capricious, and generally discriminatory enforce-ment by officials given too much authority and too few constraints. Third, it ensures that fundamental, constitutionally protected freedoms are not unreason-ably impinged or inhibited. *State v. Tanner* (1984), 15 Ohio St.3d 1, 3, 15 OBR 1, 472 N.E.2d 689.

{¶ 14} A law may be unconstitutionally overbroad "if in its reach it prohibits constitutionally protected conduct." *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 387, 618 N.E.2d 138. Laws regulating, or potentially regulating, the exercise of constitutional rights must be narrowly tailored to address the specific legislative concern. *Painesville Bldg. Dept. v. Dworken & Bernstein Co., L.P.A.,* (2000), 89 Ohio St.3d 564, 568, 733 N.E.2d 1152. A statute is narrowly tailored if it targets and eliminates no more than the exact source of the wrong it seeks to remedy. *State v. Burnett* (2001), 93 Ohio St.3d 419, 429, 755 N.E.2d 857, citing *Frisby v. Schultz* (1988), 487 U.S. 474, 485, 108 S.Ct. 2495, 101 L.Ed.2d 420. Accordingly, the overbreadth doctrine provides the breathing space that "First

Amendment freedoms need \* \* \* to survive." *Natl. Assn. for the Advancement of Colored People v. Button* (1963), 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405.

{¶ 15} A party claiming that a piece of legislation is facially overbroad must demonstrate that it can be regularly and improperly applied to prohibit protected expression and activity. *Houston v. Hill* (1987), 482 U.S. 451, 458, 107 S.Ct. 2502, 96 L.Ed.2d 398. Even where criminal statutes have a legitimate application, they will be deemed facially overbroad where they render "unlawful a substantial amount of constitutionally protected conduct." Id. at 459, 107 S.Ct. 2502, 96 L.Ed.2d 398.

{¶ 16} According to appellant, R.C. 2923.42 is both vague and overbroad. The General Assembly enacted this section as part of a comprehensive effort to "eradicate the terror created by criminal gangs by providing enhanced penalties [for gang members] and by eliminating the patterns, profits, proceeds, and instrumentalities of criminal gang activity." See Ohio Legislative Service Commission 122nd Final Bill Analysis for Am.Sub.H.B. No. 2.

{¶ 17} R.C. 2923.42(A) and (B) state:

{¶ 18} "(A) No person who actively participates in a criminal gang, with knowledge that the criminal gang engages in or has engaged in a pattern of criminal gang activity, shall purposely promote, further, or assist any criminal conduct, as defined in division (C) of section 2923.41 of the Revised Code, or shall purposely commit or engage in any act that constitutes criminal conduct, as defined in division (C) of section 2923.41 of the Revised Code.

{¶ 19} "(B) Whoever violates this section is guilty of participating in a criminal gang, a felony of the second degree."

{¶ 20} Appellant takes issue with the law's use of two phrases: "criminal gang" and "criminal gang activity." According to appellant, the terms are too vague, prompt discriminatory or subjective enforcement of the statute, and potentially infringe upon conduct protect by the First Amendment. In making this argument, however, appellant fails to acknowledge that the General Assembly specifically defined these terms, among others, as they apply to the anti-gang legislation.

{¶ 21} R.C. 2923.41(A) defines a "criminal gang" as "an ongoing formal or informal organization, association, or group of three or more persons to which all the following apply:

{¶ 22} "(1) It has as one of its primary activities the commission of one or more of the offenses listed in division (B) of this section.

{¶ 23} "(2) It has a common name or one or more common, identifying signs, symbols, or colors.

{¶ 24} "(3) The persons in the organization, association, or group individually or collectively engage in or have engaged in a pattern of criminal gang activity."

{¶ 25} A "pattern of criminal gang activity" is defined under R.C. 2923.41(B)(1). It means that "persons in the criminal gang have committed, attempted to commit, conspired to commit, been complicitors in the commission of, or solicited, coerced, or intimidated another to commit, attempt to commit, conspire to commit, or be in complicity in the commission of two or more of any of the following offenses:

{¶ 26} "(a) A felony * * *;

{¶ 27} "(b) An offense of violence * * *;

{¶ 28} "(c) A violation of section 2907.04, 2909.06, 2911.211, 2917.04, 2919.23, or 2919.24 of the Revised Code, section 2921.04 or 2923.16 of the Revised Code, section 2925.03 of the Revised Code if the offense is trafficking in marihuana, or section 2927.12 of the Revised Code."

{¶ 29} Further, R.C. 2923.41(B)(2) states:

{¶ 30} "There is a 'pattern of criminal gang activity' if all of the following apply with respect to the offenses that are listed in division (B)(1)(a), (b) or (c) of this section and that persons in the criminal gang committed, attempted to commit, conspired to commit, were in complicity in the committing, or solicited, coerced, or intimidated another to commit, attempt to commit, conspire to commit, or be in complicity in committing:

{¶ 31} "(a) At least one of the two or more offenses is a felony.

{¶ 32} "(b) At least one of those two or more offenses occurs on or after the effective date of this section.

{¶ 33} "(c) The last of those two or more offenses occurs within five years after at least one of those offenses.

{¶ 34} "(d) The two or more offenses are committed on separate occasions or by two or more persons."

{¶ 35} These definitions, read in the context of R.C. 2923.42, give ordinary citizens, as well as those officials charged with the task of enforcing the law, clear notice as to the kinds of conduct that are prohibited. The limiting language of this legislation, in particular, requiring that the participant must be acting with knowledge of the gang's activities and with specific intent to further those illegal activities and interests, serves to clarify the statute and substantially diminish the viability of any vagueness challenge.

{¶ 36} These limitations also help dispel overbreadth concerns directed at the statute. We note that the enactment, almost by definition, obviates the risk that

it will ensnare members of legitimate organizations by expressly barring the prosecution of those individuals who lack specific intent to further that organization's criminal actions. See *State v. Williams,* 148 Ohio App.3d 473, 2002-Ohio-3777, 773 N.E.2d 1107, ¶ 33. Far from establishing guilt by association alone, the state must show that the defendant was associated with the group for purposes of furthering some felonious or violent criminal conduct. Accordingly, R.C. 2923.42 focuses on the punishment of conduct, not association. In addition, constitutional rights to free association, expression, and assembly have never included the right to do so for purposes of furthering criminal activity.

{¶ 37} Because First Amendment rights are considered fundamental, claims alleging their infringement are given strict scrutiny. *NAACP v. Alabama* (1958), 357 U.S. 449, 463, 78 S.Ct. 1163, 2 L.Ed.2d 1488. In order to withstand strict scrutiny analysis, the legislature must possess a compelling governmental interest for enacting the legislation and employ the least restrictive means of accomplishing the objective. Id. In enacting anti-gang legislation, the General Assembly's mission statement clearly enunciates the compelling interest involved. It states:

{¶ 38} "(A) The General Assembly finds that it is the right of every individual regardless of race, color, creed, religion, national origin, sex, age, sexual orientation, or handicap, to be secure and protected from fear, intimidation, and physical harm caused by the activities of violent groups and individuals. It is not the intent of this act to interfere with the exercise of the constitutionally protected rights of freedom of expression and association. The General Assembly recognizes the constitutional right of every citizen to harbor and express beliefs on any lawful subject whatsoever, to lawfully associate with others who share similar beliefs, to petition lawfully constituted authority for a redress of grievances, and to participate in the electoral process.

{¶ 39} "(B) The General Assembly finds, however, that the state of Ohio is facing a mounting crisis caused by criminal gangs whose members threaten and terrorize peaceful citizens and commit a multitude of crimes. These activities, both individually and collectively, present a clear and present danger to public order and safety and are not constitutionally protected." Section 3, Am.Sub.S.B. No. 2, 147 Ohio Laws, Part I, 70, 171.

{¶ 40} The goals and interests identified above indicate the General Assembly's intent to serve a compelling state interest while preserving constitutionally protected rights. Moreover, the unambiguous terminology used to define activity prohibited by Ohio's anti-gang statute is not only clear to an individual of ordinary intelligence, but is also narrowly tailored to punish only the criminal behavior at which it was directed. Since it became effective in 1999, several

reviewing courts, including this court, have overruled constitutional challenges to R.C. 2923.42.

{¶ 41} Just as appellant claims in the instant case, the defendant in *Williams*, 148 Ohio App.3d 473, 2002-Ohio-3777, 773 N.E.2d 1107, maintained that the anti-gang provision was unconstitutionally vague and overbroad. In an analysis similar to our own, the Tenth District Court of Appeals resolved that the legislation provided sufficiently clear notice of proscribed conduct and, with respect to the overbreadth claim, concluded that:

{¶ 42} "The statute requires more than the mere voluntary association asserted by appellant. As such, the statute does not unconstitutionally establish guilt by association alone, nor does it unconstitutionally punish nominal, inactive purely technical, or passive membership, even if such is accompanied by knowledge and intent." Id. at ¶ 35. See, also, *State v. Stallings*, 150 Ohio App.3d 5, 2002-Ohio-5942, 778 N.E.2d 1110 (9th District concluded that R.C. 2923.42 was consistent with the First, Fifth, and Eighth Amendments to the Constitution).

{¶ 43} The First District also found that R.C. 2923.42 was constitutionally sound in *State v. Bennett*, 150 Ohio App.3d 450, 2002-Ohio-6651, 782 N.E.2d 101. The *Bennett* court first looked at the statute's use of the phrase "any criminal conduct" to determine whether it was unconstitutionally vague. The court noted that when R.C. 2923.42 is read in conjunction with the definitions employed in R.C. 2923.41(B) and (C), the statute limits criminal liability to active gang members who possess knowledge of the gang's criminal objectives and who, armed with that knowledge, purposely promote, further or assist the gang in its pattern of criminal activity. Given the specificity of the definitions, the court concluded that the law was not vague. Further, because the statute explicitly punishes conduct, not association, the court also held that it was not overbroad. Id. at ¶ 27, 31, 33. See, also, *State v. Rushton*, 151 Ohio App.3d 654, 2003-Ohio-692, 785 N.E.2d 492 (this court concurred with the reasoning in *Stallings*, *Williams*, and *Bennett*).

{¶ 44} Based on the above, we conclude that R.C. 2923.42 is constitutionally valid.

{¶ 45} In his third assignment of error, appellant states:

{¶ 46} "The trial court erred in overruling appellant's motion to dismiss the forfeiture specification."

{¶ 47} Initially, we note that by pleading no contest to the forfeiture specification, appellant has admitted to all of the facts that underlie this specification. Thus, appellant may not contest those facts on appeal. Crim.R. 11(B)(2). Moreover, because the statutory provisions controlling the government's seizure and forfeiture of private property only allow those claiming title or interest in the

property to challenge its seizure or forfeiture, appellant lacks standing to challenge the seizure of property he now claims belongs to his mother. In light of these limitations, the trial court properly denied appellant's motion to dismiss the forfeiture specification.

{¶ 48} Traditionally disfavored in law and equity, forfeiture is the complete loss of right, title, or interest in private property. *State v. Thrower* (1993), 85 Ohio App.3d 729, 621 N.E.2d 456; *State v. Hill* (1994), 70 Ohio St.3d 25, 31, 635 N.E.2d 1248. While forfeiture is a powerful tool in the war on crime, the United States Supreme Court has recognized that, like all such weapons, its misuse can produce devastating results. *Caplin & Drysdale, Chartered v. United States* (1989), 491 U.S. 617, 634, 109 S.Ct. 2646, 105 L.Ed.2d 528. A forfeiture may only be ordered where the "expression of the law is clear and the intent of the legislature manifest." *State v. Lilliock* (1982), 70 Ohio St.2d 23, 26, 24 O.O.3d 64, 434 N.E.2d 723.

{¶ 49} The state seized the truck involved here pursuant to R.C. 2925.42. This provision requires the government to comply with certain guidelines when undertaking the criminal forfeiture of private property. Criminal forfeiture is a distinct proceeding conducted after a finding of guilt within an existing criminal action. *In re Forfeiture of Real Property Located at 952 Gilmore Street Chillicothe, Ohio* (Jan. 29, 1997), 4th Dist. No. 96CA2206, 1997 WL 40653. Under R.C. 2925.42(B)(3)(a), a person who is convicted of or pleads guilty to a felony drug abuse offense loses his right to possess certain specific property and forfeits to the state any right, title, or interest in that property if the prosecution demonstrates by a preponderance of the evidence that it was used or intended to be used in any manner to commit or to facilitate the commission of a felony drug abuse offense.

{¶ 50} When the state intends to seek forfeiture of private property, it must, in accordance with R.C. 2925.42(B)(1)(a), specify in the instrument charging the felony drug abuse offense the nature of the right, title, or interest the alleged offender has in the property potentially subject to forfeiture. If the trial court in the underlying criminal action subsequently determines by a preponderance of the evidence that the property is subject to forfeiture, it must clearly so state in an entry. The sentencing court then orders the property's forfeiture under R.C. 2925.42(B)(5)(a). In the instant case, no forfeiture disposition was made by the trial court. Thus, we must remand this matter for the court to properly forfeit or otherwise dispose of the vehicle.

{¶ 51} This court notes, however, that appellant's mother claims to be the true (and perhaps innocent) owner of the vehicle. If this is the case, appellant's mother had and retains an opportunity to assert her interest in the

truck. Initially, she could have done so under R.C. 2925.45 by challenging the vehicle's seizure. After the vehicle's forfeiture, appellant's mother could also petition the trial court under R.C. 2925.42(F). The record reflects, as earlier stated, that the truck, while certainly seized, was never properly forfeited. Because the judgment entry disposing of the case contains no disposition on forfeiture, we must remand this matter so that the trial court can issue an order forfeiting or otherwise disposing of the vehicle. Thus, there remains an avenue for appellant's mother to assert and prove her interest in the property, if any.

{¶ 52} Those claiming an interest in seized or forfeited property have two distinct remedies available under R.C. 2925.45 and 2925.42(F). R.C. 2925.45 provides that any person aggrieved by an alleged unlawful seizure of property potentially subject to forfeiture under R.C. 2925.42 may file a motion in the appropriate court seeking its return. R.C. 2925.45(B) further explains the process involved as follows:

{¶ 53} "The motion shall specify that the seizure of specified property was unlawful, state the reasons why the movant believes the seizure was unlawful, state that the movant is lawfully entitled to possession of the seized property, and request the court of common pleas to issue an order that mandates the law enforcement agency having custody of the seized property to return it to the movant."

{¶ 54} A motion seeking the return of seized property under these strictures will not be entertained once the property is deemed subject to forfeiture. See *State v. Pringle* (Mar. 5, 1999), 6th Dist. No. L–98–1327, 1999 WL 110673. At that point, a person claiming an interest in the property must proceed under R.C. 2925.42(F). In accordance with this section, a third-party who asserts an interest in property subject to forfeiture may petition the court for a hearing to determine the validity of his alleged right, title, or interest in the property as follows:

{¶ 55} "(F)(1) Except as provided in divisions (F)(2) to (5) of this section, no person claiming any right, title, or interest in property subject to forfeiture under this section * * * may intervene in a criminal trial or appeal * * * involving the forfeiture of the property under this section or in a civil action for a civil forfeiture under section 2925.43 of the Revised Code, or may commence an action at law or equity against the state concerning the validity of his alleged right, title, or interest in the property subsequent to the filing of an indictment, complaint, or information alleging that the property is subject to forfeiture under this section * * * and alleging that the property is subject to forfeiture under this section."

{¶ 56} R.C. 2925.42(F) further requires the following:

{¶ 57} "(2) After the entry of an order of forfeiture under this section, the attorney who prosecuted the felony drug abuse offense or act shall conduct or

cause to be conducted a search of the appropriate public records that relate to the property, and make or cause to be made reasonably diligent inquiries, for the purpose of identifying persons who have any right, title, or interest in the property. The prosecuting attorney then shall cause a notice of the order of forfeiture, of his intent to dispose of the property in accordance with section 2925.44 of the Revised Code, and of the manner of the proposed disposal, to be given to each person who is known, because of the conduct of the search, the making of the inquiries, or otherwise, to have any right, title, or interest in the property, by certified mail, return receipt requested, or by personal service. Additionally, the prosecuting attorney shall cause a similar notice to be published once a week for two consecutive weeks in a newspaper of general circulation in the county in which the property was seized.

{¶ 58} "(3)(a) Any person, other than the adult offender whose conviction or guilty plea * * * whose adjudication is the basis of the order of forfeiture, who asserts a legal right, title, or interest in the property that is the subject of the order may petition the court that issued the order, within thirty days after the earlier of the final publication of notice or his receipt of notice under division (F)(2) of this section, for a hearing to adjudicate the validity of his alleged right, title, or interest in the property. The petition shall be signed by the petitioner under the penalties for falsification as specified in section 2921.13 of the Revised Code and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of his acquisition of that right, title, or interest, any additional facts supporting his claim, and the relief sought.

{¶ 59} " * * *

{¶ 60} "(4) Upon receipt of a petition filed under division (F)(3) of this section, the court shall hold a hearing to determine the validity of the petitioner's right, title, or interest in the property that is the subject of the order of forfeiture. To the extent practicable and consistent with the interests of justice, the hearing shall be held within thirty days after the filing of the petition. The court may consolidate the hearing on the petition with a hearing on any other petition filed by a person other than the offender whose conviction or guilty plea or adjudication as a delinquent child is the basis of the order of forfeiture. At the hearing, the petitioner may testify, present evidence and witnesses on his behalf, and cross-examine witnesses for the state. The state may present evidence and witnesses in rebuttal and in defense of its claim to the property and cross-examine witnesses for the petitioner. In addition to evidence and testimony presented at the hearing, the court shall consider the relevant portions of the record in the felony drug abuse offense or delinquent child case that resulted in the order of forfeiture.

{¶ 61} "(5)(a) The court shall amend its order of forfeiture in accordance with its determination if it determines, at the hearing, that the petitioner has established either of the following by a preponderance of the evidence:

{¶ 62} "(i) The petitioner has a legal right, title, or interest in the property that renders the order of forfeiture completely or partially invalid because it was vested in the petitioner, rather than the adult offender whose conviction or guilty plea or the delinquent child whose adjudication is the basis of the order, or was superior to any right, title, or interest of that offender, at the time of the commission of the felony drug abuse offense or act that is the basis of the order.

{¶ 63} "(ii) The petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of the purchase reasonably without cause to believe that it was subject to forfeiture under this section."

{¶ 64} These procedures demonstrate that appellant, who now claims no interest in the truck, was procedurally barred from instituting a pretrial challenge to the 1993 Yukon's seizure and has no standing to raise this issue in his appeal. His mother, however, who apparently does claim some interest in the truck was in a position to attempt a pretrial challenge to forfeiture. Moreover, contrary to appellee's claim, her failure to do so under R.C. 2925.45 does not now preclude her from challenging the Yukon's forfeiture as long as she follows the limitations detailed under R.C. 2925.42(F), due to the necessity that we remand the matter to the trial court. Without an order from the trial court reflecting its disposition of the Yukon, any claim filed pursuant to R.C. 2925.42 would be premature.

{¶ 65} Based on the record and the relevant law, this court hereby overrules appellant's constitutional challenges to Ohio's criminal gang statute and affirms the trial court's denial of appellant's motion to dismiss the forfeiture specification. Nevertheless, we remand the matter to the trial court for purposes of disposing of the 1993 Yukon truck. In the event the trial court decides to dispose of the vehicle in forfeiture, the procedures and remedies set forth under R.C. 2925.42 would apply.

Judgment affirmed
and cause remanded.

GENE DONOFRIO and VUKOVICH, JJ., concur.