**SUPERIOR COURT**
**of the**
**STATE OF DELAWARE**

Jeffrey J Clark
Judge

Kent County Courthouse
38 The Green
Dover, DE 19901

Telephone (302)739-5333

May 11, 2016

Jason Cohee, DAG
Zachary George, DAG
Department of Justice
102 West Water Street, Second Floor
Dover, DE 19901

Julianne E. Murray, Esq.
Ronald D. Phillips, Jr., Esq.
Murray Phillips, P. A.
109 North Bedford Street
Georgetown, DE 19947

> *Re:*   ***State v. Rakiim A. Strickland***
>       ***Case#1505010488***

Counsel:

Defendant Rakiim Strickland ("Defendant") moves to exclude DNA Evidence based on relevance and that its probative value, if any, is substantially outweighed by the danger of unfair prejudice. Expert testimony must be helpful to the trier of fact and must be reliable. After a *Daubert* hearing, the Defendant clarified that he does not challenge the reliability of the evidence. Rather, Defendant challenges its helpfulness to the jury, its relevance, and its propensity to unfairly prejudice the Defendant.

At issue are the two proffered opinions of the State's DNA expert, Sarah Lindauer. Namely, she opines that (1) the Defendant's DNA could be a match to the DNA evidence found on a weapon involved in the case, but since he is an African American, there is a one in two chance that has been wrongfully included as a potential contributor to the DNA recovered from the gun; and (2) three or more persons handled the weapon, and at least one of them was a male.

After a hearing, argument, and considering the written submissions, the Court holds that the opinion that the Defendant is included as a possible contributor is barred from admission at trial in the State's case-in-chief. However, DNA evidence that at least three individuals touched the gun, and at least one of them was a male is admissible at trial. Accordingly, Defendant's motion to exclude opinion evidence involving the DNA analysis is GRANTED in part, and DENIED in part.

Defendant is charged with Attempted Murder in the First Degree, Possession of a Firearm During the Commission of a Felony, Possession of a Firearm by Person Prohibited, Possession of Firearm Ammunition by Person Prohibited, Criminal Mischief and Criminal Trespass in the First Degree. The evidentiary dispute centers on a DNA swab from a shotgun involved in the incident. The Defendant proffers that identification of the shooter will be a central issue at trial.

The State forwarded a copy of its DNA Analysis Report to Defendant on or about September 18, 2015. According to the testimony at a DRE 104 hearing, the DNA laboratory report involved a mixed sample of DNA obtained from the swab of a shotgun. At the motion hearing, the State's expert who created the report, Sarah Lindauer, testified that Defendant, who is an African American male, could be included as a contributor to the sample. However, this potential inclusion had a one in two chance of being incorrect.[1] Testimony at the hearing also tracked the laboratory report's second conclusion that the DNA profile recovered from the shotgun includes the DNA of at least three individuals, and that at least one of the contributors is male.

In Delaware, DNA evidence must "satisfy the pertinent Delaware Rules of

---

[1] The report quantifies the likelihood of erroneous inclusion based on four population groups. The relevant population group to this case is the African American population. For the relevant population group, there is a one in two chance of wrongful inclusion.

2

Evidence concerning the admission of scientific testimony or evidence."[2] Delaware follows the *Daubert*[3] five factor standard in analyzing the admissibility of such scientific evidence.[4] In the context of DNA evidence, the five factors to be considered are "1) that the expert witness was qualified [D.R.E. 702]; 2) that the evidence offered was otherwise admissible, relevant and reliable [D.R.E. 401 & 402]; 3) that the bases for the opinion are those reasonably relied upon by experts in the field [D.R.E. 703]; 4) that the specialized knowledge being offered will assist the trier of fact to understand the evidence or determine a fact in issue [D.R.E. 702]; and 5) whether such evidence would create unfair prejudice, confuse the issues or mislead the jury [D.R.E. 403]."[5] Furthermore, "for DNA evidence to be admissible, both the procedures used to obtain a match and the statistical evidence interpreting the significance of a match must satisfy the Delaware standard applicable to the admissibility of scientific evidence."[6]

Here, the Defendant raised no issues regarding the qualifications of the expert or the reliability of her testing. Accordingly, the issues addressed by the Court are limited to considerations of whether the evidence would be helpful to the jury, relevant, and admissible after a DRE 403 analysis.

In support of its argument, the State cites the Delaware Supreme Court decision in *State v. Taylor*[7] where the Court upheld the Superior Court's decision to admit

---

[2] *Nelson v. State*, 628 A.2d 69, 74 (Del. 1993).

[3] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

[4] *Nelson*, 628 A.2d at 74.

[5] *Id.*

[6] *Id.* at 76.

[7] *State v. Taylor*, 76 A.3d 791 (Del. 2013).

DNA evidence.[8] There, a DNA sample was recovered from a weapon at issue in the case.[9] The results of testing of that evidence provided that the defendant's DNA profile "could not be excluded."[10] As in the case at hand, in *Taylor*, less than a full DNA profile was available and because of the limited sample it was possible that defendant never touched the weapon, with the caveat that he could not be excluded as a contributor.[11] Furthermore, in *Taylor,* a statistical number establishing a statistical significance "could not be provided and that theoretically the entire American male population could be a DNA contributor."[12] In the underlying evidentiary context of that case, the Delaware Supreme Court held that the trial court did not abuse its discretion in admitting the DNA test results for two reasons.[13] First, the testing established that four different people handled the gun.[14] That information made more likely the conclusion that the defendant, a member of a gang, shared the weapon and that the gang consisted of three or more people.[15] Second, the Court held that "the fact that [defendant] could not be excluded had some probative value because other suspects were excluded, and [defendant] was not."[16] Therefore, the DNA evidence was

---

[8] *Id.* at 802.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 802-03.

[12] *Id.* at 803.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

appropriately admitted into evidence, despite the weak statistical evidence associated with the DNA results.[17]

In the case at hand, the State does not proffer evidence making the expert's first opinion relevant. Relevant evidence is evidence that tends to make a fact of consequence more or less likely. Even this low threshold for admissibility is not met in the context of an opinion that Defendant is a possible DNA contributor to the mixture with a qualification that such an opinion has a one in two chance (50%) of being incorrect. Nor would such evidence be helpful to the trier of fact. Furthermore, even assuming *arguendo* that there is some relevance to such an opinion, any such marginal relevance is substantially outweighed by the risk of confusing the jury or unfairly prejudicing the Defendant. There is a real danger that a jury could misconstrue the statistical significance of such evidence and be confused by it.

The present case can be distinguished from others with low statistical significance evidence that could still eliminate or include large parts of the general population. For instance, in *State v. Roth*,[18] the Superior Court evaluated the admissibility of DNA evidence of an approximately 50% probability that a defendant contributed to a DNA sample.[19] In that case, the Superior Court found that the *Daubert* factors were satisfied with the exception of the fifth factor, the unfair prejudice prong.[20] The DNA report indicated that 50.2% of the population would be excluded as possible donors to the sample but that Defendant was not. By a narrow margin, this statistic

---

[17] *Id.*

[18] *State v. Roth*, 2000 WL 970673 (Del. Super. May 12, 2000).

[19] *Id.* at *2.

[20] *Id.*

5

makes more probable than not that Defendant could not be excluded as a contributor. Because the expert and report gave only a 50.2% probability that the defendant was the donor, the Court found the probative value very limited.[21] In that context, there arguably was some marginal relevance, because it eliminated a large pool of possible contributors but did not eliminate the Defendant.

The case at hand differs because the offered opinion in this case provides that Defendant Strickland could be a contributor, but that possibility has a fifty percent chance of being wrong. In other words as opposed to low statistical significance, this evidence has no statistical significance. Nevertheless, even given the greater relevance of the expert's opinion in *Roth*, that Court found that the risk of prejudice to the defendant was significant because the jury would likely be confused or mislead by testimony that he was "included" in the population that could have contributed to the DNA sample.[22] Therefore, under the DRE 403 balancing test, the Court in *Roth* held the evidence inadmissible.[23] The evidence in the case at hand would likewise be inadmissible after a DRE 403 balancing.

Furthermore, the Federal District Court for the Eastern District of Pennsylvania examined the issue of DNA evidence of low statistical significance in *U.S v. Graves*.[24] There, the Court held that DNA evidence of a low statistical significance may be probative to show that a defendant cannot be excluded as a contributor to the DNA

---

[21] *Id.*

[22] *Id.* at *3.

[23] *Id.*

[24] *U.S. v. Graves*, 465 F.Supp.2d 450 (E.D.PA. 2006).

6

sample and properly admitted pursuant to DRE 403.[25] In such cases, the Court noted that "[w]here the [trial] court provides careful oversight, the potential prejudice of the DNA evidence can be reduced to the point where this probative value outweighs it."[26] However, the *Graves* court held that "even with appropriate safeguards, the minimal probative value of the DNA evidence - in which half of the relevant population cannot be excluded as a contributor to the DNA sample - is substantially outweighed by the danger of unfair prejudice and confusion of the issues."[27] Accordingly, that Court also excluded the DNA evidence for failing a 403 analysis with a ratio of 1:2 from the African American Population.[28]

At issue here are *Daubert* factors two and five. These include the relevance of the proffered evidence as well as the weight of the probative value, if any, in relation to the danger of unfair prejudice to Defendant. This Court, as opposed to the courts in *Roth* and *Graves* finds that a one in two chance of misidentifying the Defendant as a possible contributor makes the proferred opinion not relevant. As in *Roth* and *Graves*, however, the Court agrees that if such an opinion had any relevance, its very limited probative value would be substantially outweighed by the danger of unfair prejudice to the Defendant.

The opinion that at least three persons contributed DNA to the shotgun swab, and at least one of them was a male has some relevance. Although such relevance is not particularly high, such an opinion can be structured and presented in such a way

---

[25] *Id.* at 458.

[26] *Id.* (Citing *U.S. v. Chischilly*, 30 F.3d 1144, 1158 (9th Cir. 1994)).

[27] *Id.* at 459.

[28] *Id.* at 458-59.

and clarified through cross-examination) that it would be unlikely to confuse the jury or unfairly prejudice the Defendant. The nature of such an opinion based on reliable scientific findings will be easily understood by the jury. Unlike the inadmissable opinion, there is not the danger that the jury would misunderstand its context. The State may therefore present that opinion. The State will also not be precluded from presenting evidence in its case-in-chief about the limited nature of the sample and that it was not sufficient to enable other relevant findings.

For the reasons stated above, the expert's opinion testimony at trial shall not include the probability of Defendant's DNA consistency to the DNA analysis on the shotgun swab. If the State feels that a door has somehow been opened by the Defendant requiring the admission of such testimony, it should first raise the issue outside the presence of the jury. In addition to offering the admissible opinion discussed above, the State may offer evidence regarding the underlying science of the DNA tests performed and limitations in the sample and testing process which did not permit other admissible conclusions.

**IT IS SO ORDERED**

_____
Judge

oc:   Prothonotary
      File

8